## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

INFORMED CONSENT ACTION NETWORK,

       *Plaintiff,*

    v.

CENTERS FOR DISEASE CONTROL AND
PREVENTION, *et al.*,

       *Defendants.*

Civil Action No. 1:22-cv-481-RP

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION...................................................................................................................................1

BACKGROUND ....................................................................................................................................1

I.      CDC's V-safe Program...............................................................................................................1

II.     ICAN's FOIA Request and this Lawsuit.................................................................................3

LEGAL STANDARDS .........................................................................................................................4

ARGUMENT..........................................................................................................................................6

I.      CDC conducted an adequate search. .......................................................................................6

II.     CDC properly withheld the Free-text Responses pursuant to Exemption 6...............8

      A.      The data files with the Free-text Responses contain information exempt
             from disclosure under Exemption 6......................................................................8

      B.      The non-exempt portions of the Free-text Responses are not reasonably
             segregable.....................................................................................................................13

CONCLUSION ....................................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Allen v. U.S. Secret Serv.,*
   335 F. Supp. 2d 95 (D.D.C. 2004) ............................................................................................. 5

*Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Comm.*
   907 F.2d 203 (D.C. Cir. 1990) ................................................................................................... 14

*Am. Immigr. Council v. U.S. Immigr. & Custom Enf't,*
   464 F. Supp. 3d 228 (D.D.C. 2020) ............................................................................................ 8

*Am. Immigr. Laws. Ass'n v. DHS,*
   485 F. Supp. 3d 100 (D.D.C.) ................................................................................................... 14

*Ancient Coin Collectors Guild v. U.S. Dep't of State,*
   641 F.3d 504 (D.C. Cir. 2011) ..................................................................................................... 6

*Ayuda, Inc. v. FTC,*
   70 F. Supp. 3d 247 (D.D.C. 2014) .................................................................................... *passim*

*Baldwin v. U.S. Dep't of Energy,*
   No. 1:18-cv-1872, 2020 WL 376563 (D.D.C. Jan. 23, 2020) .................................................. 10

*Brown v. Wash. Metro. Area Transit Auth.,*
   2020 WL 806197 (D.D.C. Feb. 18, 2020) ................................................................................. 14

*Calderon v. U.S. Dep't of Just.,*
   297 F. Supp. 3d 65 (D.D.C. 2018) .............................................................................................. 7

*Campbell v. U.S. Dep't of Just.,*
   133 F. Supp. 3d 58 (D.D.C. 2015) .............................................................................................. 5

*Cause of Action Inst. v. Exp.-Imp. Bank of U.S.,*
   521 F. Supp. 3d 64 (D.D.C. 2021) ............................................................................................ 10

*CIA v. Sims,*
   471 U.S. 159 (1985) .................................................................................................................... 5

*Coleman v. Lappin,*
   607 F. Supp. 2d 15 (D.D.C. 2009) ............................................................................................ 10

*Cook v. Nat'l Archives & Recs. Admin.,*
   758 F.3d 168 (2d Cir. 2014) ........................................................................................................ 9

*Cooper Cameron Corp. v. U.S. Dep't of Labor,*
   280 F.3d 539 (5th Cir. 2002) ....................................................................................................... 5

*Ctr. for Immigr. Studs. v. U.S. Citizenship & Immigr. Servs.*
   2022 WL 4289561 (D.D.C. Sept. 16, 2022) ...................................................................... 14, 17

*DiBacco v. U.S. Army,*
    795 F.3d 178 (D.C. Cir. 2015) ............................................................................. 6

*Dillon v. U.S. Dep't of Just.,*
    444 F. Supp. 3d 67 (D.D.C. 2020) ..................................................................... 6, 7

*Eakin v. U.S. Dep't of Defense,*
    2017 WL 3301733 (W.D. Tex. Aug. 2, 2017) ...................................................... 5

*Elec. Priv. Info Ctr. v. DHS,*
    384 F. Supp. 2d 110 (D.D.C. 2005) .................................................................... 11

*FBI v. Abramson,*
    456 U.S. 615 (1982) ........................................................................................ 4, 5

*Freedom Watch, Inc. v. NSA,*
    783 F.3d 1340 (D.C. Cir. 2015) ........................................................................... 6

*Hainey v. U.S. Dep't of Interior,*
    925 F. Supp.2d 34 (D.D.C. 2013) ...................................................................... 15

*Hunton & Williams LLP v. EPA,*
    346 F. Supp. 3d 61 (D.D.C. 2018) ..................................................................... 10

*Inst. for Just. v. IRS,*
    941 F.3d 567 (D.C. Cir. 2019) ........................................................................... 14

*Int'l Counsel Bureau v. U.S. Dep't of Def.,*
    723 F. Supp. 2d 54 (D.D.C. 2010) ................................................................ 15, 17

*Jackson v. Exec. Off. for U.S. Att'ys,*
    No. 1:17-cv-2208, 2019 WL 1046295 (D.D.C. Mar. 5, 2019) ............................. 10

*John Doe Agency v. John Doe Corp.,*
    493 U.S. 146 (1989) ........................................................................................ 4, 5

*Jud. Watch v. U.S. Dep't of Def.,*
    715 F.3d 937 (D.C. Cir. 2013) ............................................................................. 6

*Jud. Watch, Inc. v. Dep't of Navy,*
    25 F. Supp. 3d 131–38 (D.D.C.) ......................................................................... 9

*Jud. Watch, Inc. v. U.S. Dep't of State,*
    681 F. App'x 2 (D.C. Cir. 2017) ........................................................................ 14

*Leopold v. CIA,*
    177 F. Supp. 3d 479 (D.D.C. 2016) ..................................................................... 6

*Lewis v. U.S. Dep't of Just.,*
    867 F. Supp. 2d 1, (D.D.C. 2011) ........................................................................ 9

*Long v. Off. of Pers. Mgmt.*,
    692 F.3d 185 (2d Cir. 2012) ........................................................... 5, 10, 12, 14

*Long v. U.S. Immigr. & Customs Enf't*,
    149 F. Supp. 3d 39 (D.D.C. 2015) ........................................................... 14

*Martin v. U.S. Dep't of Just.*,
    488 F.3d 446 (D.C. Cir. 2007) ........................................................... 5

*Mitchell v. U.S. Dep't of Veterans Affs.*,
    No. 18-cv-2672, 2021 WL 5180261 (S.D.N.Y. Nov. 8, 2021) ........................... 12

*Montgomery v. IRS*,
    514 F. Supp. 3d 125 (D.D.C. 2021) ........................................................... 6

*Nat'l Ass'n of Home Builders v. Norton*,
    309 F.3d 26 (D.C. Cir. 2002) ........................................................... 10, 12

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
    879 F.2d 873 (D.C. Cir. 1989) ........................................................... 8, 10

*Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*,
    2017 WL 1494513 (S.D.N.Y. 2017) ........................................................... 14, 17

*Niskanen Ctr. v. FERC*,
    20 F.4th 787 (D.C. Cir. 2021) ........................................................... 10, 11

*People for the Am. Way v. Nat'l Park Serv.*,
    503 F. Supp. 2d 284 (D.D.C. 2007) ........................................................... 13

*Prechtel v. FCC*,
    330 F. Supp. 3d 320 (D.D.C 2018) ........................................................... 13

*Prison Legal News v. Samuels*,
    787 F.3d 1142 (D.C. Cir. 2015) ........................................................... 9

*Rojas v. FAA*,
    941 F.3d 392 (9th Cir. 2019) ........................................................... 10

*Rural Hous. All. v. U.S. Dep't of Agric.*,
    498 F.2d 73 (D.C. Cir. 1974) ........................................................... 11, 12

*Schrecker v. U.S. Dep't of Just.*,
    349 F.3d 657 (D.C. Cir. 2003) ........................................................... 14

*Seife v. U.S. Dep't of State*,
    298 F. Supp. 3d 592–24 (S.D.N.Y. 2018) ........................................................... 10

*Shapiro v. U.S. Dep't of Just.*,
    40 F.4th 609 (D.C. Cir. 2022) ........................................................... 7

*Shapiro v. U.S. Social Sec. Admin.,*
    525 F. Supp. 3d 528 (D. Vt. 2021) ................................................................. 14, 15, 17

*U.S. Dep't of Def. v. Fed. Labor Relations Auth.*
    510 U.S. 487 (1994) ....................................................................................... 10, 11, 12

*U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press,*
    489 U.S. 749 (1989) ....................................................................................... 12, 13

*U.S. Dep't of State v. Wash. Post Co.,*
    456 U.S. 595 (1982) ....................................................................................... 8, 9

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.,*
    141 S. Ct. 777 (2021) ..................................................................................... 4

*Vietnam Veterans of Am. Conn. Greater Hartford Ch. 120 v. DHS,*
    8 F. Supp. 3d 188 (D. Conn. 2014) ................................................................. 15, 17

*Wessler v. U.S. Dep't of Just.,*
    381 F. Supp. 3d 253 (S.D.N.Y. 2019) ............................................................. 12

*White Coat Waste Proj. v. U.S. Dep't of Veterans Affs.,*
    404 F. Supp. 3d 87 (D.D.C. 2019) ................................................................... 9

*Wilbur v. CIA,*
    355 F.3d 675 (D.C. Cir 2004) ......................................................................... 7

*Wolf v. CIA,*
    473 F.3d 370 (D.C. Cir. 2007) ....................................................................... 6

## Statutes

5 U.S.C. § 552 ..................................................................................................... *passim*

## Rules

Fed. R. Civ. P. 56 ................................................................................................ 5

**INTRODUCTION**

This case presents a familiar issue: A Freedom of Information Act ("FOIA") request that seeks an immense quantity of information, the processing of which would require a herculean effort from the target agency that is beyond what FOIA requires.

The Informed Consent Action Network ("ICAN") requested from the Centers for Disease Control and Prevention ("CDC") all data submitted to the "V-safe" program—a smartphone-based program that uses periodic surveys to monitor the health of voluntary participants following COVID-19 vaccination. In response, CDC produced a substantial volume of data that it collected from millions of V-safe participants—none of which could be identified to a particular individual.

But the agency withheld from disclosure a subset of information derived from millions of "free-text" responses to questions on V-safe's health surveys, pursuant to a FOIA exemption that protects information implicating a personal privacy interest from unwarranted disclosure. *See* 5 U.S.C. § 552(b)(6). CDC determined that many of these responses contain personally identifiable information, the disclosure of which would publicly link participants to highly sensitive health information. And because it would take tens of thousands of workhours to manually review and redact millions of free-text responses, CDC determined that segregating the non-exempt information within these responses would be unreasonably burdensome and was therefore beyond its FOIA obligations.

Because that determination is justified under FOIA and supported by the record, and because the CDC complied with its search obligations, the Court should grant the agency summary judgment.

**BACKGROUND**

I.    **CDC's V-safe Program**

The U.S. Department of Health and Human Services ("HHS") has monitored for decades the safety of vaccines licensed or otherwise authorized for use in the United States. *See* HHS, *About VAERS*, https://perma.cc/2K6U-VCDX. HHS's vaccine safety monitoring plays a critical function

1

in ensuring that accurate and timely information regarding vaccine safety is communicated to public health officials, healthcare providers, and the public. *See* Myers, Tanya, *et al.*, *The v-safe after vaccination health checker: Active vaccine safety monitoring during CDC's COVID-19 pandemic response*, NIH (Jan. 23, 2023), https://perma.cc/TNF7-MBRF. In 2020, in the throes of the COVID-19 pandemic, HHS determined that it was necessary to supplement its existing vaccine safety surveillance efforts with a new program designed for real-time safety monitoring for COVID-19 vaccines. *Id.* CDC rolled out this new surveillance program—dubbed "V-safe"—in December 2020, in preparation for the initial distribution of COVID-19 vaccines in the United States. *Id.*

V-safe employs a smartphone-based application that allows participants who received a COVID-19 vaccine dose to voluntarily enroll and report their (or a dependent's) health after vaccination in daily, weekly, and monthly intervals. *See* DEX1 (App.4). A participant enrolls in V-safe by entering basic personal information (*e.g.*, name, mobile number, date of birth, sex, zip code) and the vaccine dose(s) he or she has received. *Id.* Once a participant enrolls, the V-safe smartphone application will periodically send text messages to the participant that provide individualized links to web-based health check-in surveys. *Id.* V-safe asks participants to complete a health check-in survey (i) every day for the first week following vaccination; (ii) every week for the next five weeks; and (iii) at three, six, and twelve months after vaccination. *Id.* The health check-in surveys ask participants a series of questions regarding, among other things, the status of their health, any symptoms they are experiencing, and any medical care they have received. *Id.* (App.9). Some questions provide pre-specified answer options—*e.g.*, a participant can choose from a list of specific symptoms to answer, "*Have you experienced any of these symptoms today?*" *Id.* (App.4–5). And participants answer other questions by typing a response into a "free text" field. *Id.* (App.5).

Since V-safe's inception in December 2020, CDC has collected information from over 10.1 million V-safe participants. *Id.*

II.     **ICAN's FOIA Request and this Lawsuit**

On April 1, 2022, ICAN submitted a FOIA request to CDC, seeking "[a]ll data submitted to v-safe since January 1, 2020." *Id.* (App.17–18). The following week, CDC sent a letter to ICAN that acknowledged receipt of the request. *Id.* (App.20–21). Given the large volume of responsive records, CDC informed ICAN that the agency would be unable to issue a final determination within 20 days of receiving the request, *see* 5 U.S.C. § 552(a)(6)(A), and invited ICAN to narrow the scope of the records requested. *See* DEX1 (App.3, 20).

On May 17, 2022, ICAN filed this action under FOIA, seeking to compel CDC to produce non-exempt records responsive to its FOIA request. *See* Compl. for Decl. & Inj. Relief ("Compl.") at p. 9, ECF No. 1. CDC answered the complaint on June 22, 2022. *See* Answer, ECF No. 14.

CDC commenced its search for records responsive to ICAN's request in June 2022. *See* DEX1 (App.4). The agency searched a records system controlled by a team of CDC staff within the National Center for Emerging and Zoonotic Infectious Diseases that is responsible for administering the V-safe program and that maintains CDC's records of V-safe data ("V-safe Safety Team"). *Id.* (App.4, 6). The search collected eight separate data files: (i) registration data; (ii) vaccination data; (iii) race/ethnicity data; (iv) data derived from V-safe participants' responses to the health check-in surveys for participants 3 years of age and older; (v) data derived from participants' responses to the health check-in surveys for participants younger than 3 years of age; (vi) data derived from participants' responses to a "user motivation survey"; (vii) data derived from participants' responses to questions regarding eligibility and interest in the COVID-19 vaccine pregnancy registry; and (viii) data derived from participants' responses to questions for the V-safe Nested Case-Control Study. *Id.* (App.6, 7). The V-safe Safety Team confirmed that these data files contained all data submitted to the V-safe smartphone application from its inception on December 14, 2020, through July 31, 2022. *Id.* (App.8).

Between September 2022 and January 2023, CDC produced to ICAN ten Comma Separated

Values ("CSV") files[1] containing all eight of the data files collected during its search, with certain information withheld. *Id.* (App.7–8). Pursuant to FOIA's Exemption 6, *see* 5 U.S.C. § 552(b)(6), the agency withheld participants' names, phone numbers, birth days and months, and the first two digits of their zip codes from the CSV file containing the registration data,[2] as well as a small amount of information in the CSV file containing participants' free-text responses to the "user motivation survey."[3] *Id.* Additionally, pursuant to Exemption 6, the agency withheld from the CSV files containing the data derived from participants' answers to questions on the health check-in surveys the 6.8 million "free-text" responses submitted by participants ("Free-text Responses"). *Id.*

ICAN does not challenge any of CDC's withholdings from the CSV files containing the registration data or the free-text responses to the "user motivation survey." This motion therefore addresses only (i) the adequacy of CDC's search for records responsive to ICAN's FOIA request, and (ii) the propriety of the agency's withholding of the Free-text Responses from the health check-in surveys data files pursuant to Exemption 6.

## LEGAL STANDARDS

FOIA represents a "workable balance" struck by Congress "between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted). To that end, "FOIA mandates the disclosure of documents held by a federal agency," *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021), unless the documents fall within one of nine exemptions enumerated in 5 U.S.C. § 552(b), "under which disclosure could be refused," *FBI v. Abramson*, 456 U.S. 615, 621 (1982). Therefore,

---

[1] CSV files are plain-text files that separate data entries with commas; their contents can be viewed in spreadsheet programs like Microsoft Excel.

[2] In November 2022, CDC reproduced the CSV file containing the registration data to release participants' birth years, which the agency withheld from the original production. *See* DEX1 (App.7).

[3] In February 2023, CDC reproduced the CSV file containing participants' free-text responses to the "user motivation survey" with a small number of redactions removed. *See* DEX1 (App.8).

while FOIA's "dominant objective" is public disclosure, *John Doe Agency*, 493 U.S. at 152, "the public's right to information" under the statute is "not absolute," *Martin v. U.S. Dep't of Just.*, 488 F.3d 446, 453 (D.C. Cir. 2007).[4] FOIA's exemptions reflect Congress's recognition "that legitimate governmental and private interests could be harmed by release of certain types of information." *Id.*; *accord CIA v. Sims*, 471 U.S. 159, 166–67 (1985) ("[P]ublic disclosure is not always in the public interest . . . ."). And although these exemptions should be "narrowly construed," *Abramson*, 456 U.S. at 630, a court must ensure that they are given a "meaningful reach and application," *John Doe Agency*, 493 U.S. at 153.

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Eakin v. U.S. Dep't of Defense*, No. 5:16-cv-972, 2017 WL 3301733, at *3 (W.D. Tex. Aug. 2, 2017). Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Generally, to prevail on summary judgment in the FOIA context, an agency bears the burden of showing that it conducted an adequate search for records responsive to a request, that any records or information that the agency withheld from disclosure fall within a FOIA exemption, and that it disclosed all reasonably segregable, non-exempt information. *Campbell v. U.S. Dep't of Just.*, 133 F. Supp. 3d 58, 64 (D.D.C. 2015).

An agency can carry its burden on summary judgment to demonstrate the adequacy of its search and to prove the applicability of any claimed exemptions by declaration. *Long v. Off. of Pers. Mgmt.*, 692 F.3d 185, 190–91 (2d Cir. 2012). A reviewing court must accord an agency's declaration "substantial weight" and a "presumption of good faith." *Allen v. U.S. Secret Serv.*, 335 F. Supp. 2d 95, 98–99 (D.D.C. 2004). "[S]ummary judgment is warranted on the basis of agency" declarations when they describe the scope and method of the search and "the justifications for nondisclosure with reasonably specific detail and are not controverted by either contrary evidence in the record nor by

---

[4] Courts in the Fifth Circuit frequently rely on FOIA precedent from the D.C. Circuit, "the federal appellate court with the most experience in this field." *Cooper Cameron Corp. v. U.S. Dep't of Labor*, 280 F.3d 539, 543 (5th Cir. 2002).

evidence of agency bad faith." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (citation omitted); *Leopold v. CIA*, 177 F. Supp. 3d 479, 486 (D.D.C. 2016). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Jud. Watch v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (per curiam) (citation omitted).

## ARGUMENT

### I.     CDC conducted an adequate search.

CDC's search for records responsive to ICAN's request satisfied its obligations under FOIA. "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Montgomery v. IRS*, 514 F. Supp. 3d 125, 131 (D.D.C. 2021) (citation omitted). In other words, an agency is entitled to summary judgment on the adequacy of its search if it shows that it made "a good faith effort to conduct a search" using methods that "can be reasonably expected to produce the information requested." *DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015) (citation omitted). To meet this standard, an agency need not search every records system; rather, it must search only locations where it believes responsive records are likely located. *Dillon v. U.S. Dep't of Just.*, 444 F. Supp. 3d 67, 91 (D.D.C. 2020). The issue to be resolved is whether the search was adequate, "not whether there might exist any other documents possibly responsive to the request." *Montgomery*, 514 F. Supp. 3d at 131 (citation omitted). In short, a "search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *DiBacco*, 795 F.3d at 194–95 (citation omitted); *see also Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (assessing adequacy "by the appropriateness of the methods used to carry out the search").

An agency establishes the reasonableness of its search by "reasonably detailed, nonconclusory affidavits describing its efforts." *Freedom Watch, Inc. v. NSA*, 783 F.3d 1340, 1345 (D.C. Cir. 2015) (citation omitted). An agency's declaration is sufficient if it describes "what records were searched, by

whom, and through what process." *Calderon v. U.S. Dep't of Just.*, 297 F. Supp. 3d 65, 67 (D.D.C. 2018). An agency's declaration must be accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Shapiro v. U.S. Dep't of Just.*, 40 F.4th 609, 613 (D.C. Cir. 2022) (citation omitted); *accord Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir 2004) ("[M]ere speculation" that other "documents might exist[] does not undermine the determination that the agency conducted an adequate search for the requested records.").

Here, CDC's search was reasonably calculated to uncover all records responsive to ICAN's request for all data submitted to V-safe since January 1, 2020. As the agency explains, all data that participants submit to the V-safe smartphone application are initially collected and stored in a secure server maintained by a software company under a contract with HHS. *See* DEX1 (App.5). For CDC to obtain the data stored on this server, the V-safe Safety Team must download data files from the company's secure cloud location onto a server maintained by the agency. *Id.* (App.5–6). Each workday, the team downloads the following files of data newly submitted to the smartphone application: (i) registration data; (ii) vaccination data; (iii) race/ethnicity data; (iv) data derived from the health check-in surveys for participants 3 years of age and older; and (v) data derived from the health check-in surveys for participants younger than 3 years of age. *Id.* Then, each Monday, the prior week's daily data files are added to the agency's corresponding files containing the cumulative data that CDC has collected through the V-safe smartphone application since December 2020 (*e.g.*, the daily files of vaccination data are added to the file with the cumulative vaccination data). *Id.* (App.6). The daily and cumulative data files are maintained exclusively by the V-safe Safety Team, and only a small group of CDC staff (all of whom work on the V-safe Safety Team) has authorization to access these files. *Id.*

Based on this information, CDC reasonably determined that the V-safe Safety Team was the only likely location of the records responsive to ICAN's FOIA request. *See Dillon*, 444 F. Supp. 3d at 91 ("[An agency] needs to establish [only] that it conducted a reasonable search of the locations likely

to possess the requested records." (cleaned up with citation omitted)). The team provided the FOIA Office ten CSV files comprising eight separate data files, *see supra* pp. 6–7, which were all produced to ICAN, *see* DEX1 (App.6–8). And the V-safe Safety Team confirmed that the ten CSV files contained all data submitted to the V-safe smartphone application (except the 6.8 million Free-text Responses from the health check-in surveys data files) since its inception on December 14, 2020, through July 31, 2022. *Id.* (App.8). Accordingly, as the agency's declaration explains, CDC's search was reasonably calculated to locate all responsive records. The Court should therefore grant the agency summary judgment regarding the adequacy of its search.

## II.     CDC properly withheld the Free-text Responses pursuant to Exemption 6.

CDC's withholding of the Free-text Responses from the health check-in surveys data files pursuant to Exemption 6 also is justified under FOIA and supported by the record. Many of the Free-text Responses contain personally identifiable information that, if disclosed, would publicly link individual participants to their highly sensitive health information. And because manually reviewing and redacting all 6.8 million responses would impose an unreasonable burden on the agency, CDC properly withheld the Free-text Responses in full.

### A.     The data files with the Free-text Responses contain information exempt from disclosure under Exemption 6.

Exemption 6 permits an agency to withhold from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The purpose of this exemption is "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982). To that end, Congress designed Exemption 6 to broadly "protect personal information in public records, even if it is not [itself] embarrassing or of an intimate nature." *Am. Immigr. Council v. U.S. Immigr. & Custom Enf't*, 464 F. Supp. 3d 228, 237 (D.D.C. 2020) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989)).

To determine whether a responsive record is protected from disclosure under Exemption 6, "a court must first determine that the record fits into one of the relevant categories"—personnel, medical, or "similar files." *Jud. Watch, Inc. v. Dep't of Navy*, 25 F. Supp. 3d 131, 137–38 (D.D.C.) (Brown Jackson, J.). "If a record so qualifies, the court then determines whether disclosure of that document 'would compromise a substantial, as opposed to a *de minimis*, privacy interest.'" *Id.* at 138 (citation omitted). And finally, if a substantial privacy interest is at stake, the court must balance "the privacy interest in withholding the record against the public's interest in the record's disclosure." *Id.*

*"Similar files."* As a threshold matter, the data files with the Free-text Responses qualify as "similar files" under Exemption 6. The Supreme Court has interpreted that statutory term "broadly to include any government records on an individual which can be identified as applying to that individual." *White Coat Waste Proj. v. U.S. Dep't of Veterans Affs.*, 404 F. Supp. 3d 87, 99 (D.D.C. 2019) (cleaned up) (quoting *Wash. Post Co.*, 456 U.S. at 598). And it "covers not just files," but also encompasses "bits of personal information" that refer to a particular individual, *Prison Legal News v. Samuels,* 787 F.3d 1142, 1147 (D.C. Cir. 2015) (citation omitted), like "a person's name, address, place of birth, employment history, and telephone number," *Lewis v. U.S. Dep't of Just.*, 867 F. Supp. 2d 1, 17, (D.D.C. 2011); *accord Cook v. Nat'l Archives & Recs. Admin.*, 758 F.3d 168, 175 (2d Cir. 2014) ("[A] record is a 'similar file' if it contains personal information identifiable to a particular person.").

As CDC explains, many of the Free-text Responses contain detailed personal information of V-safe participants. *See* DEX1 (App.10–11). Although the health check-in survey questions that elicited these responses asked about participants' health status, symptoms, and medical care, and did not specifically ask participants to provide their personal information, many participants used the available free-text fields to provide CDC with such information. *Id.* A random sample of 500 free-text responses alone revealed dozens of responses containing, *e.g.*, participants' full names, home addresses, email addresses, dates of birth, and telephone numbers—*i.e.*, bits of information that directly identify

a particular participant. *Id.* Based on the results of this random sample, as well as the V-safe Safety Team's familiarity with the health check-in surveys data files, CDC estimates that there are likely hundreds of thousands of Free-text Responses that contain the same or similar forms of personally identifiable information. *Id.* Therefore, the data files containing the Free-text Responses unquestionably qualify as "similar files" under Exemption 6. *See, e.g., Jackson v. Exec. Off. for U.S. Att'ys*, No. 1:17-cv-2208, 2019 WL 1046295, at *3 (D.D.C. Mar. 5, 2019) (holding that records containing, *e.g.*, private individuals' names, street addresses, and telephone numbers qualify as "similar files" under Exemption 6); *Rojas v. FAA*, 941 F.3d 392, 405 (9th Cir. 2019) ("[G]overnment records containing personal email addresses constitute 'similar files.'"); *Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 623–24 (S.D.N.Y. 2018) (individuals' names and email addresses); *Coleman v. Lappin,* 607 F. Supp. 2d 15, 22 (D.D.C. 2009) (individuals' names and dates of birth); *Hunton & Williams LLP v. EPA*, 346 F. Supp. 3d 61, 86 (D.D.C. 2018) (email addresses and mobile phone numbers). *Baldwin v. U.S. Dep't of Energy*, No. 1:18-cv-1872, 2020 WL 376563, at *4 (D.D.C. Jan. 23, 2020) (mobile phone numbers).

*Substantial privacy interest.* It is also self-evident that disclosure of V-safe participants' personally identifiable information in the Free-text Responses would compromise those participants' substantial privacy interests. This standard "is not very demanding," *Niskanen Ctr. v. FERC*, 20 F.4th 787, 791 (D.C. Cir. 2021) (citation omitted): "A substantial privacy interest is anything greater than a *de minimis* privacy interest." *Cause of Action Inst. v. Exp.-Imp. Bank of U.S.*, 521 F. Supp. 3d 64, 93 (D.D.C. 2021).

V-safe participants' interest in keeping their names and other personal information private easily "surmounts this low bar." *Niskanen Ctr.*, 20 F.4th at 791. As an initial matter, and setting aside everything else contained in the Free-text Responses, courts have routinely found that publicly disclosing private individuals' names and addresses alone implicates substantial privacy interests. *See, e.g., id.* (collecting cases); *U.S. Dep't of Def. v. Fed. Labor Relations Auth. (FLRA),* 510 U.S. 487, 501 (1994); *Long*, 692 F.3d at 192; *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 35 (D.C. Cir. 2002);

*Horner*, 879 F.2d at 877 ("[T]he privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant."). Indeed, the simple fact that disclosing individuals' names and contact information "might invite unwanted intrusions" or "contact or solicitation" is a risk to personal privacy sufficient to find the individuals' interests "substantial." *Niskanen Ctr.*, 20 F.4th at 792 (collecting cases); *accord FLRA*, 510 U.S. at 500–01 (finding a substantial privacy interest in personal addresses because "[m]any people simply do not want to be disturbed at home").

But the privacy interests implicated here are far more acute than the simple desire to be left alone. As CDC explains, disclosing a V-safe participant's personal information through release of the Free-text Responses would necessarily result in the publication of their highly sensitive health and medical information (which they reported to V-safe with the understanding that their identities would be held in confidence). *See* DEX1 (App.4, 11). This consequence of disclosure is hardly speculative. *See Elec. Priv. Info Ctr. v. DHS*, 384 F. Supp. 2d 110, 116 (D.D.C. 2005) ("To justify their Exemption 6 withholdings," agencies "must show that the threat to [personal] privacy is real rather than speculative."). Participants who used the free-text fields in the health check-in surveys to report personally identifiable information along with their symptoms or any medical care they received would be connected to this sensitive health information based on information in the Free-text Response alone. *See* DEX1 (App.9–11). Moreover, each participant has a unique registration number that would be released with the Free-text Responses (as part of the health check-in surveys data files). Any participant whose personal information is contained in a Free-text Response would therefore be easily traced to other health information that has been disclosed anonymously in the already-published V-safe data files, which also include participants' registration numbers. *Id.* (App.7). Indeed, even the mere fact that an individual is listed as a participant in V-safe indicates his or her vaccination status. *Id.* (App.4). And depending on the content of a participant's health information, its disclosure and connection to an individual could have far reaching consequences, including reputational harms to the

individual and his or her family and potentially his or her ability to obtain insurance and employment.

It is virtually tautological to say that a person holds a significant privacy interest in the "intimate details" concerning his or her "medical conditions." *Rural Hous. All. v. U.S. Dep't of Agric.*, 498 F.2d 73, 77 (D.C. Cir. 1974); *accord, e.g.*, *Mitchell v. U.S. Dep't of Veterans Affs.*, No. 18-cv-2672, 2021 WL 5180261, at *8 (S.D.N.Y. Nov. 8, 2021); *Wessler v. U.S. Dep't of Just.*, 381 F. Supp. 3d 253, 258 (S.D.N.Y. 2019). Courts have routinely found substantial privacy interests in information that is far less sensitive in nature. *See, e.g.*, *Norton*, 309 F.3d at 34–35 (finding that landowners had substantial privacy interests in parcel numbers because their disclosure could lead to birdwatchers trespassing on their land). Safe to say, the highly sensitive health information that would be publicly connected to a particular V-safe participant if his or her personally identifiable information were disclosed with the Free-text Responses is the type of information that is simply not intended to be "freely available to the public." *See U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 763–64 (1989). There is thus a substantial privacy interest in the nondisclosure of this personal information.

*Clearly unwarranted invasion of personal privacy.* Because there is a substantial privacy interest at stake, this Court must balance V-safe participants' interests in keeping their personally identifiable information private against the public's interest in obtaining this information. That balance militates strongly against public disclosure.

Indeed, there is no conceivable public interest in the disclosure of V-safe participants' personal information. "The only public interest cognizable under" Exemption 6 "is the public 'understanding of the operations or activities of the government.'" *Long*, 692 F.3d at 193 (quoting *Reps. Comm.*, 489 U.S. at 775); *accord Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 268 (D.D.C. 2014) ("[T]he only relevant public interest" under Exemption 6 is "the extent to which disclosure of the information sought would 'shed light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" (quoting *FLRA*, 510 U.S. at 497)). But disclosure of V-safe participants'

personally identifiable information—*e.g.*, names, home addresses, telephone numbers, dates of birth—would tell the public "nothing about 'what the government is up to.'" *See Long*, 692 F.3d at 193. The Supreme Court has been clear that no public interest is furthered "by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Reps. Comm.*, 489 U.S. at 773; *accord People for the Am. Way v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 304 (D.D.C. 2007). And in any event, it is hard to imagine any cognizable public interest that could outweigh participants' substantial interests in keeping their highly sensitive health information private and in avoiding the consequences of this information's public disclosure.

Moreover, publicly disclosing V-safe participants' personally identifiable information would not only further no public interest, but it would undermine the public's interest in the federal government's ability to monitor vaccine safety. Although participants provided their personal and health information to CDC through V-safe, they did not consent to the public disclosure of their personal information. On the contrary, V-safe informed participants that this information would remain confidential and private. *See* DEX1 (App.4). If CDC were unable to ensure that participants' personal information would be kept confidential, it is likely that individuals would either not share sensitive information with V-safe or choose not to participate in the program altogether. That, in turn, would frustrate the agency's COVID-19 vaccine safety monitoring efforts, which depend on CDC's ability to collect full, timely, and accurate information from vaccinated individuals.

*       *       *

In sum, the data files with the Free-text Responses contain information that is exempt from disclosure pursuant to Exemption 6.

## B.     The non-exempt portions of the Free-text Responses are not reasonably segregable.

Under FOIA, an agency must produce any "reasonably segregable portion of a record" that is otherwise withheld pursuant to an enumerated exemption. 5 U.S.C. § 552(b)(9). Like with its

withholding decisions, an agency bears the burden of explaining its "decisions on segregability." *Prechtel v. FCC*, 330 F. Supp. 3d 320, 335 (D.D.C 2018) (citation omitted). It can carry that burden by submitting a declaration that shows "with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Ayuda*, 70 F. Supp. 3d at 275. "And an agency is entitled to a presumption that it complied with the obligation to disclose reasonably segregable material, which may be rebutted only with a quantum of evidence." *Am. Immigr. Laws. Ass'n v. DHS*, 485 F. Supp. 3d 100, 113 (D.D.C.) (cleaned up with citation omitted).

As CDC explains, the non-exempt information within the Free-text Responses is not *reasonably* segregable, because having to review and redact 6.8 million Free-text Responses to segregate non-exempt information would impose an unreasonable burden on the agency. FOIA "protects agencies from undue burdens" like this. *Ctr. for Immigr. Studs. v. U.S. Citizenship & Immigr. Servs. (CIS)*, 2022 WL 4289561, at *3 (D.D.C. Sept. 16, 2022) (quoting *Inst. for Just. v. IRS*, 941 F.3d 567, 570 (D.C. Cir. 2019)). That is because "[a]gencies respond to FOIA requests at taxpayer expense, and burdensome requests hinder an agency's ability to respond to other FOIA requests and to conduct its other statutory responsibilities." *Id.*; *see also Long*, 692 F.3d at 192 ("FOIA does not require an agency to mobilize its full resources for compliance with FOIA requests."). Courts therefore routinely acknowledge that an agency need not comply with a FOIA request that would "impose an unreasonable burden upon the agency." *Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Comm. (AFGE)*, 907 F.2d 203, 209 (D.C. Cir. 1990); *accord, e.g., Schrecker v. U.S. Dep't of Just.*, 349 F.3d 657, 664 (D.C. Cir. 2003) ("To require the Government to shoulder such a potentially onerous task . . . goes well beyond the 'reasonable effort' demanded in this context."); *Jud. Watch, Inc. v. U.S. Dep't of State*, 681 F. App'x 2, 4 (D.C. Cir. 2017).

This includes requests that would require "overly burdensome post-search efforts," like having to "locate, review, redact, and arrange for inspection a vast quantity of material," *CIS*, 2022 WL 4289561, at *3–4 (quoting *AFGE*, 907 F.2d at 209); *accord, e.g., Ayuda*, 70 F. Supp. 3d at 275; *Nat'l Day*

*Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, 2017 WL 1494513, at *11–15 (S.D.N.Y. 2017);
*Long*, 692 F.3d at 192–93; *Brown v. Wash. Metro. Area Transit Auth.*, 2020 WL 806197, at *9 (D.D.C.
Feb. 18, 2020); *Long v. U.S. Immigr. & Customs Enf't*, 149 F. Supp. 3d 39 (D.D.C. 2015); *Shapiro v. U.S.
Social Sec. Admin.*, 525 F. Supp. 3d 528 (D. Vt. 2021); *Vietnam Veterans of Am. Conn. Greater Hartford Ch.
120 v. DHS*, 8 F. Supp. 3d 188, 203 (D. Conn. 2014); *Hainey v. U.S. Dep't of Interior*, 925 F. Supp.2d 34,
45 (D.D.C. 2013); *Int'l Counsel Bureau v. U.S. Dep't of Def.*, 723 F. Supp. 2d 54, 59 (D.D.C. 2010).

This well-established principle was applied in *Ayuda*, a case that bears a striking resemblance
to this one. There, the plaintiff submitted multiple FOIA requests seeking information in a Federal
Trade Commission ("FTC") database containing millions of consumer complaints about alleged illegal
business activity. 70 F. Supp. 3d at 254. FTC's database (like the V-safe database) contained data
derived from both pre-specified and free-text fields. *Id.* Those free-text fields (like those at issue here)
posed an issue: consumers could enter personally identifiable information either about themselves or
about an alleged wrongdoer, even though the field in question did not ask for any such information.
*Id.* Accordingly, FTC determined that the free-text fields within the database contain (or could contain)
information that is exempt from disclosure under, *inter alia*, Exemption 6. *Id.* at 261. And because FTC
would need to manually review and redact millions of consumer complaints within the database to
segregate non-exempt information within the free-text fields—a task that FTC estimated would take
more than 8,000 workhours—the agency determined that this part of the database was not reasonably
segregable. *Id.* at 255. On that issue, the court granted summary judgment in favor of FTC. *Id.* at 274–
77. The court found that having to expend 8,000 workhours to "perform[] a manual review" of
millions of complaints "to protect the privacy interests of third-party citizens by preventing the
disclosure of their personal identifying information" "would impose an unreasonable burden on the
FTC well beyond what FOIA requires." *Id.* at 276–77. Accordingly, the court held that the agency
properly withheld "the entire universe of information contained in the data fields," even though "only

a small percentage of that information is exempt" under an enumerated exemption. *Id.*

The facts of this case compel the same conclusion. Requiring CDC to review and redact the enormous volume of information contained in the Free-text Responses would impose an unreasonable burden on the agency that FOIA simply does not contemplate. As CDC explains, there are 6.8 million Free-text Responses within the health check-in surveys data files. *See* DEX1 (App.8). To process these responses, a FOIA analyst would need to conduct a manual, line-by-line review of each response (in CSV format) to determine whether any information is personally identifiable or otherwise exempt from disclosure under Exemption 6, redacting any exempt information while ensuring that any non-exempt portions of the response are segregated. *Id.* (App.11).[5] And pursuant to FOIA Office procedures, once this first level of review is complete, either a senior FOIA analyst or a Team Lead in the FOIA office would have to conduct another manual, line-by-line review of each Free-text Response to ensure that all redactions are accurate, consistent, and comply with agency standards, and that all personally identifiable information has been redacted. *Id.* (App.11–12).

Based on the amount of time it has taken a FOIA analyst to process similar records, as well as his experience and familiarity with processing records under FOIA, CDC's FOIA Director estimates that, on average, a FOIA analyst dedicated solely to processing the Free-text Responses would be able to process about 2,525 responses per 40-hour week. *Id.* (App.12). That means it would take a FOIA analyst about 107,723 workhours to complete just the first level of processing for all 6.8 million Free-text Responses. *Id.* Or in other words, if one FOIA analyst were assigned to process these responses full-time (*i.e.*, 40 hours per week), it would likely take that analyst *over 51 years* to finish the first level of processing. *Id.* (App.12–13). And that says nothing of the second level of review by a senior FOIA

---

[5] This review process will likely require that a FOIA analyst conduct research and consult with subject-matter experts within CDC to determine whether the disclosure of certain types of information will interfere with a particular participant's personal privacy. *See* DEX1 (App.11).

analyst or Team Lead, which will likewise take tens of thousands of workhours to complete. *Id.*

Given the immense volume of Free-text Responses and the considerable amount of time it would take to review them and redact the personally identifiable information of tens of thousands of V-safe participants, it is not reasonably possible for CDC to process them. The FOIA Office comprises thirteen FOIA analysts who are responsible for responding to all FOIA requests from receipt to completion of any administrative appeal, as well as assisting with any related litigation. *Id.* (App.13). Even if CDC were to devote all thirteen analysts to work full-time on processing the Free-text Responses, it would take the agency almost 4 years to complete the task. *Id.* But that's not a viable option, as the FOIA Office cannot put all other requests, appeals, and related litigation tasks on hold for the sake of processing a single dataset in response to a single FOIA request. *See Int'l Counsel Bureau*, 723 F. Supp. 2d at 59 ("[E]nlisting a full-time staff of twelve for a year to review hundreds of thousands of unsorted images would impose . . . an undue burden.").

The burden that processing the Free-text Responses would impose on CDC far exceeds lesser post-search burdens that courts have found unreasonable. *See, e.g.*, *Ayuda*, 70 F. Supp. 3d at 275–76 (8,000 workhours to manually review and redact); *CIS*, 2022 WL 4289561, at *5 (8,151 workhours to process); *Vietnam Veterans of Am.*, 8 F. Supp. 3d at 202–04 (27 work years to review and redact). And it is comparable to other burdens that courts have refused to countenance. *See, e.g.*, *Shapiro*, 525 F. Supp. 3d at 539–40 (193,311 workhours to manually review and redact); *Nat'l Day Laborer*, 2017 WL 1494513, at *12–13 (between 19 and 58 work years to review and redact).

In sum, requiring CDC to review and redact the Free-text Responses would, by any measure, impose an unreasonable burden on the agency that is beyond what FOIA contemplates. Accordingly, the non-exempt information within these responses is not reasonably segregable. The Court should therefore grant the agency summary judgment regarding the propriety of its withholding of the Free-text Responses in full pursuant to Exemption 6.

## CONCLUSION

For the foregoing reasons, the Court should enter summary judgment in favor of CDC on all claims.

Dated: March 20, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Director, Federal Programs Branch

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Mont. Bar No. 55816869
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

On March 20, 2023, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Western District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Trial Attorney
United States Department of Justice