**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| INFORMED CONSENT ACTION NETWORK, <br><br> *Plaintiff,* <br><br> v. <br><br> CENTERS FOR DISEASE CONTROL AND PREVENTION, *et al.,* <br><br> *Defendants.* | Civil Action No. 1:22-cv-481-RP |

**APPENDIX IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Table of Appendix**

| Bates Stamps | Exhibit | Description |
|---|---|---|
| App.000001–App.000021 | DEX1 | Declaration of Roger Andoh |

Dated: March 20, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Director, Federal Programs Branch

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Mont. Bar No. 55816869
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

On March 20, 2023, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Western District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Jody D. Lowenstein
JODY D. LOWENSTEIN
Trial Attorney
United States Department of Justice

# DEX1

# UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| INFORMED CONSENT ACTION NETWORK, | ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | Civil Action No. 1:22-cv-481-RP |
| CENTERS FOR DISEASE CONTROL AND PREVENTION, *et al.*, | ) ) ) | |
| *Defendants.* | ) | |

## DECLARATION OF ROGER ANDOH

I, Roger Andoh, declare the following to be true and correct:

1.      I am the Freedom of Information Act ("FOIA") Officer for the Centers for Disease Control and Prevention ("CDC") and the Agency for Toxic Substances and Disease Registry ("ATSDR"), agencies within the U.S. Department of Health and Human Services ("HHS"). I have held this position since June 2016. In this capacity, I am responsible for supervising and directing the day-to-day activities of the CDC/ATSDR FOIA Office ("FOIA Office"), which is responsible for responding to requests under FOIA, 5 U.S.C. § 552, for records from within all CDC and ATSDR operating divisions.

2.      My official duties include, *inter alia*, (i) supervising searches conducted by the FOIA Office for records potentially responsive to a FOIA request, including coordinating with CDC and/or ATSDR components that are likely to possess such records; (ii) determining whether the records collected during a search are responsive to the FOIA request; and (iii) determining whether responsive records are appropriate for release and whether any responsive records should

be withheld, either in whole or in part, in accordance with FOIA and HHS's regulations, *see* 45 C.F.R. Part 5.

3.      I make the statements in this declaration on the basis of personal knowledge and on information acquired by me in the course of my official duties, including my familiarity with the FOIA Office's resources and procedures for responding to FOIA requests, my review of and determinations regarding the FOIA request that is the subject of this litigation, and my discussions with CDC and HHS personnel who are knowledgeable about the records requested by the request.

4.      The purpose of this declaration is to explain the search the FOIA Office conducted for records responsive to the FOIA request at issue in this case, and to explain the basis for my determination that certain information should be withheld pursuant to FOIA's Exemption 6, 5 U.S.C. § 552(b)(6), and cannot be reasonably segregated.

## I.      Plaintiff's FOIA Request

5.      On April 1, 2022, Plaintiff Informed Consent Action Network submitted to the FOIA Office a FOIA request seeking the following records: "*All data submitted to v-safe since January 1, 2020.*" The document attached as Exhibit A is a true and correct copy of that request.

6.      On April 6, 2022, I sent Plaintiff a letter that acknowledged the FOIA Office's receipt of Plaintiff's FOIA request and assigned it request number 22-01281-FOIA. In the letter, I also informed Plaintiff that the FOIA Office would be unable to issue a final determination within 20 days of receiving the FOIA request, *see* 5 U.S.C. § 552(a)(6)(A)(i), and invited Plaintiff to narrow the scope of the request to limit the volume of potentially responsive records. The document attached as Exhibit B is a true and correct copy of that letter.

7.      On May 17, 2022, Plaintiff filed this action under FOIA, 5 U.S.C. § 552, seeking to compel CDC to produce all non-exempt records responsive to its FOIA request.

## II.     CDC's Search

8.      After receiving Plaintiff's FOIA request, the FOIA Office commenced its search in June 2022. To start, I determined that the records responsive to the request were located within the CDC's National Center for Emerging and Zoonotic Infectious Diseases and were controlled solely by a team of CDC staff responsible for administering the CDC's "V-safe" program ("V-safe Safety Team").

9.      V-safe is an active vaccine-safety surveillance program that monitors the health of voluntary participants following COVID-19 vaccination. V-safe employs a smartphone-based application that allows participants who received a COVID-19 vaccine dose to report their health after vaccination in daily, weekly, and monthly intervals. Enrollment in V-safe is voluntary and is initiated by the participant (or, if a dependent, his or her representative) by accessing vsafe.cdc.gov. A participant enrolls in V-safe by entering basic personal information (*e.g.*, name, mobile number, date of birth, sex, zip code) and the vaccine dose(s) he or she has received. V-safe participants are informed prior to enrollment (as well as each time they log into their accounts) that "the confidentiality, integrity, and privacy" of their personal information in V-safe will be safeguarded.[1] Once a participant is enrolled, the smartphone application will periodically send text messages to the participant with individualized links that direct him or her to web-based health check-in surveys. The V-safe smartphone application will ask participants to complete a health check-in survey (i) every day for the first week following vaccination; (ii) every week for the next five weeks; and (iii) at three, six, and twelve months after vaccination.[2] The health check-in

---

[1] *See* vsafe.cdc.gov. CDC's website also includes a V-safe "Frequently Asked Questions" page, which states that participants' "personal information in v-safe is protected so that it stays confidential and private." *See* CDC, *Frequently Asked Questions and Troubleshooting*, https://www.cdc.gov/vaccinesafety/ensuringsafety/monitoring/v-safe/faqs.html.

[2] If and when a participant logs another dose (whether from the primary series or a booster dose) into his or her V-safe smartphone application account, a new round of health check-in surveys starts and follows the same time intervals as the initial round.

surveys ask participants a series of questions with pre-specified answer options—*e.g.*, a list of symptoms to select to answer "*Have you experienced any of these symptoms today?*"—as well as questions that allow a participant to enter a "free text" response, as explained further below.[3]

10.     In addition to the data collected through the health check-in surveys, the V-safe smartphone application collected data from V-safe participants for three additional purposes. *First*, CDC used the V-safe smartphone application to invite a subset of V-safe participants to respond to questions in a "user motivation survey." *Second*, CDC used the V-safe smartphone application to invite all V-safe participants who met certain criteria to respond to questions regarding eligibility and interest in participating in CDC's COVID-19 vaccine pregnancy registry. *Third*, CDC used the V-safe smartphone application to invite a subset of V-safe participants to respond to questions for the V-safe Nested Case-Control Study. CDC collected no other data through the V-safe smartphone application.

11.     All data that a V-safe participant submits to the V-safe smartphone application is initially collected and stored in a secure server maintained by Oracle, a software company, pursuant to a contract with HHS.[4] To obtain the data stored on Oracle's server, staff on the V-safe Safety Team download data files from Oracle's secure, FedRAMP-approved cloud location onto a secure server that CDC maintains. These daily data files are downloaded and maintained in comma-separated value ("CSV") format. Each workday, the V-safe Safety Team downloads the following files of data newly submitted to the V-safe smartphone application: (i) participant registration information; (ii) participant vaccination information; (iii) answers to health check-in surveys for participants 3 years and older; (iv) answers to health check-in surveys for participants

---

[3] Since December 14, 2020, CDC has collected information from over 10.1 million V-safe participants.
[4] The server is housed in the Oracle Cloud Infrastructure U.S. Government Cloud and is Federal Risk and Authorization Management Program ("FedRAMP") approved.

younger than 3 years; (v) participant race/ethnicity information. Then, each Monday morning, the prior week's data files are added to the corresponding files containing the cumulative data that CDC has collected through the V-safe smartphone application since its inception (*e.g.*, the daily files of "participant race/ethnicity" data are added to the file containing the cumulative "participant race/ethnicity" data). These cumulative data files are maintained in both CSV and statistical analysis software ("SAS") formats.  Once they are added to the cumulative data files, the daily data files are archived on the CDC's secure server. Only a small group of CDC personnel (all of whom work on the V-safe Safety Team) has authorization to access the daily and the cumulative data files.

12.     Based on this information, I determined that the V-safe Safety Team within the National Center for Emerging and Zoonotic Infectious Diseases was the only likely location of the records requested by Plaintiff's FOIA request—that is, "*All data submitted to v-safe since January 1, 2020.*"

13.     The V-safe Safety Team provided the FOIA Office with ten CSV files containing eight separate data files: (i) the cumulative file for race/ethnicity data; (ii) the cumulative file for vaccination data; (iii) the cumulative file for registration data; (iv) the cumulative file for data derived from V-safe participants' answers to questions on the health check-in surveys for ages 3 and older (with free-text responses withheld); (v) the cumulative file for data derived from V-safe participants' answers to questions on the health check-in surveys for participants younger than 3 (with free-text responses withheld); (vi) data derived from a "user motivation survey"; (vii) data derived from participants' responses to questions regarding eligibility and interest in participating in the COVID-19 vaccine pregnancy registry; and (viii) data derived from participants' responses

- 5 -

to questions for the V-safe Nested Case-Control Study. The team uploaded these CSV files to a share drive, to which a FOIA analyst and I were granted access.

## III.    CDC's Production of All Non-exempt Records Responsive to Plaintiff's Request

14.    On September 30, 2022, the FOIA Office produced to Plaintiff five CSV files containing data that V-safe participants submitted to the V-safe smartphone application between December 14, 2020, though July 31, 2022. Specifically, these CSV files contained all the data (submitted within that time period) from the cumulative data files for (i) race/ethnicity data; (ii) vaccination data; (iii) registration data (with some information withheld pursuant to FOIA's Exemption 6, 5 U.S.C. § 552(b)(6));[5] (iv) participant answers to questions on the health check-in surveys for participants 3 years and older (with the free-text responses withheld pursuant to Exemption 6); and (v) participant answers to questions on the health check-in surveys for participants younger than 3 years old (with the free-text responses withheld pursuant to Exemption 6).

15.    On November 17, 2022, the FOIA Office produced to Plaintiff an additional CSV file containing data that V-safe participants submitted to the V-safe smartphone application between May 31, 2022, through June 8, 2022. This file contained all the data collected from participants' answers to questions with pre-specified options on the "user motivation survey."

16.    On December 7, 2022, the FOIA Office produced an additional CSV file containing data that V-safe participants submitted to the V-safe smartphone application between May 1, 2022, through June 31, 2022. This file contained all the data collected from participants' free-text

---

[5] On November 17, 2022, the FOIA Office reproduced the CSV file containing participant registration information to release participants' birth year, which had been withheld from the production on September 30, 2022.

responses to questions on the "user motivation survey," with some information redacted pursuant to 5 U.S.C. § 552(b)(6).[6]

17.     On January 17, 2023, the FOIA Office produced three additional CSV files containing data that V-safe participants submitted to the V-safe smartphone application. Specifically, these files contained all the data collected (i) between April 13, 2021, through June 07, 2021, from participants' responses to questions regarding eligibility and interest in participating in the COVID-19 vaccine pregnancy registry; and (ii) between May 10, 2021, through June 10, 2021, from participants' responses to questions for the V-safe Nested Case-Control Study.

18.     The V-safe Safety Team confirmed that the ten CSV files that the FOIA Office produced to Plaintiff between September 30, 2022, and January 17, 2023, contained all the data that participants submitted to the V-safe smartphone application since it launched on December 14, 2020, to July 31, 2022, except for participants' free-text responses to questions on V-safe's health check-in surveys.

## IV.    CDC's Determination that V-safe Participants' Free-Text Responses to Health Check-in Survey Questions Should be Withheld in Full Pursuant to Exemption 6

19.     For the reasons set forth below, I determined that V-safe participants' free-text responses in the cumulative data files for participant answers to V-safe's health check-in surveys ("Free-text Responses") should be withheld under Exemption 6, and that the non-exempt information contained in the free-text responses was not reasonably segregable.

### A.     The Free-text Responses

20.     The cumulative data files for participant answers to V-safe's health check-in surveys ("Health Check-in Surveys Data Files") include 6.8 million free-text responses submitted by participants between December 14, 2020, and July 31, 2022.

---

[6] On February 17, 2023, the FOIA Office reproduced this CSV file with certain redactions removed.

21.    Each health check-in survey that a V-safe participant received during this period contained two questions that allowed the participant to type a free form response into a text field (as opposed to selecting a pre-specified answer option).

a.    All health check-in surveys asked the participant whether any reported symptoms or health conditions caused the participant to "*Get care from a doctor or healthcare professional.*" If the participant answered "yes" to this question, the survey then asked the participant to identify the type of healthcare visit by either choosing from a list of pre-specified answer options or to describe the visit in a free-text field marked as "other."

b.    The daily health check-in surveys during the first week after vaccination asked the participant to select from a list of pre-specified options of symptoms that he or she was experiencing, and also asked the participant to describe in a free-text field "*Any other symptoms or health conditions you want to report.*"

c.    Each health check-in survey after the first week asked the participant to provide a description of their symptom(s) in a free-text field if they answered yes to the following question: "*Since your/their last check-in, have you/they experienced any new or worsening symptoms or health conditions?*"

22.    Although CDC had intended that the free-text fields within the V-safe health check-in surveys capture no more than 250 characters per question, quality assessments of the health check-in data conducted by the V-safe Safety Team revealed that two free-text fields were inadvertently designed to collect up to 4000 characters per response. This allowed participants to submit much lengthier free-text responses to the question "*Any other symptoms or health conditions you want to report*" and the question regarding the type of healthcare a participant received. These

free-text fields were modified in June 2021 to capture a maximum of 250 characters for all future surveys.

23.     Early quality assessments of the health check-in data conducted by the V-safe Safety Team revealed repeated instances of V-safe participants providing personally identifying information ("PII") in their free-text responses. These responses included, *e.g.*, full names, last names, full dates of birth, full or partial residential addresses, telephone numbers, e-mail addresses, social security numbers, and dates of death.

24.     The FOIA Office has since examined a random sample of 500 Free-text Responses within the Health Check-in Surveys Data Files.[7] That random sample revealed that over 7% of the free-text responses contained some form of PII, such as full names, dates of birth, social security numbers, and telephone numbers.  In addition, I conducted a random search of 500,000 Free-text Responses, using a cursory keyword search of terms that would likely reveal PII, such as "@gmail.com," "@yahoo.com," "mobile number," "cell," "name," and "phone." The following are just some examples of PII found within those Free-Text Responses, organized by participants' unique registrant codes:

- H74880:   Full name, date of birth, telephone number, home address, email address

- H206854:  Telephone number and email address (reflecting participant's full name)

- H513330:  Full name, date of birth, telephone number, home address, email address

- H255454:  Full name, cell phone number, email address

- F449322:  Phone number and email address

- H187122:  Old and new telephone numbers

---

[7] This random sample was taken from a sample of 500,000 Free-text Responses, to which the FOIA Office was provided short-term access by the V-safe Safety Team.

- F371256:  Full name and deceased child's name

- F434361:  Full name and telephone number

- G59766:   Full Name

- H227312:  Email address

25.     Based on this random sample and search, as well as the V-safe Safety Team's familiarity with the data files, it is likely that hundreds of thousands Free-text Responses contain the same or similar forms of PII. And because many of the Free-text Responses contain V-safe participants' PII, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy by publicly connecting those individuals to their private and highly sensitive health information, I determined that the Health Check-in Surveys Data Files contain information that should be withheld pursuant to Exemption 6.

**B.     Processing the Free-Text Responses Would Unduly Burden the Agency**

26.     I also determined that the non-exempt information within the Free-text Responses is not reasonably segregable, because to segregate such information would be unduly burdensome.

27.     Processing the Free-text Responses would require a FOIA analyst conducting a manual, line-by-line review of each response to determine whether any information is PII or otherwise exempt from disclosure under Exemption 6, and to redact any exempt information by replacing it with "(b)(6)" while ensuring that any non-exempt portions of the response are segregated. This process will likely require that the FOIA analyst conduct research and to consult with subject-matter experts within CDC to determine whether the disclosure of certain types of information will cause an interference with personal privacy.

28.     After the FOIA analyst completed his or her review and redaction of the 6.8 million free-text responses, either a senior FOIA analyst or a Team Lead in the FOIA Office would have

to conduct, pursuant to FOIA Office procedures, another manual, line-by-line review of each free-text response (both the redacted and the unredacted version) to ensure accuracy, consistency, compliance with agency standards and processes, and that all PII and other information that should be withheld pursuant to Exemption 6 is redacted.

29.     I estimate that, on average, a FOIA analyst devoted only to processing the Free-text Responses will be able to process about 2,525 responses per 40-hour week. I based this estimate on the amount of time it took a FOIA analyst to finish processing a similar document—*i.e.*, the CSV file with V-safe participants' free-text responses to the "user motivation survey, *see supra* ¶¶ 10, 13, 15—as well as my years of experience supervising the processing of records under FOIA. My estimate also attempts to account for the time it may take a FOIA analyst to conduct research or consult with a subject-matter expert regarding a particular Free-text Response. And although I estimated that, on average, it will likely take a senior FOIA analyst or a Team Lead less time to review a Free-text Response after a FOIA analyst has processed it, a second-level reviewer will still need to look at the information that an analyst redacted to ensure that the redaction is proper, and also will need to ensure that no PII remains in Free-text Response.

30.     Therefore, at a minimum, I estimated that it would take a FOIA analyst about 107,723 workhours to complete just the first level of processing for the 6.8 million Free-text Responses within the Health Check-in Surveys Data Files. Further, I estimate that the second level of review by a senior FOIA analyst or Team Lead will likewise take tens of thousands of workhours to finish.

31.     Given the enormous volume of the Free-text Responses and the considerable amount of time it would take for the FOIA Office to review and redact the highly sensitive health information of hundreds of thousands of V-safe participants, processing these responses would

- 11 -

create an extraordinary and undue burden on CDC. As explained above, by its nature, FOIA processing requires human beings to manually analyze records to determine whether information is, based on content and context, exempt or non-exempt from disclosure. Whether CDC has the ability to process the Free-text Responses thus depends on the ability of human beings to complete the work, and to do so with the necessary level of care given the highly sensitive nature of the information involved.

32.     In light of its limited staff and resources, it is not reasonably possible for the FOIA Office to process the Free-text Responses. The FOIA Office comprises thirteen FOIA analysts who are responsible for responding to all FOIA requests from receipt to completion of administrative appeal, as well as assisting with any related litigation. During fiscal years 2019 through 2022, the FOIA Office processed about 8,719 requests, 412 appeals, and assisted with 24 cases regarding FOIA requests under its purview. These thirteen FOIA analysts must continue to process the requests the FOIA Office received both before and after Plaintiff submitted its request.

33.     As explained above, under my best estimate, it will take about 107,723 workhours to complete the FOIA-analyst-level processing of the Free-text Responses. Accordingly, if one dedicated FOIA analyst were assigned to process this file full-time (*i.e.*, 8 hours per day, 40 hours per week), it would take that analyst *over 51 years* to finish the first level of processing. Alternatively, if the FOIA Office were to devote all thirteen FOIA analysts to work full-time on processing the Free-text Responses, it would still take them almost exactly 4 years to complete the task. But as just explained, devoting thirteen FOIA analysts—or even half of them—to processing one request is not a viable option, as the FOIA Office cannot put all other requests, appeals, and related litigation tasks on hold for the sake of processing a single dataset in response to a single FOIA request.

34.    Additionally, processing the Free-text Responses under FOIA would largely duplicate ongoing efforts by CDC to make the data contained within the file publicly available in a format that is both useful for research and ensures that participants' highly sensitive health information is protected. In September 2022, CDC finalized a contract with an information-technology services company to translate the data collected from V-safe participants' free-text responses to V-safe's health check-in surveys into Medical Dictionary for Regulatory Activities ("MedDRA") terminology or "codes." MedDRA coding is a widely accepted approach to standardizing reports of adverse health events that has been utilized for over a decade by public health officials and regulatory authorities, including CDC and the Food and Drug Administration, to provide a detailed yet standardized understanding of medical diagnoses and symptoms.[8] MedDRA coding facilitates research by converting highly variable language describing, *e.g.*, symptoms, diagnoses, medical procedures to consistent, universally accepted, and easily ascertainable medical terminology.[9] Without medical coding, researchers would have to develop their own analytic approaches to group together similar events that have been described using highly variable language. Additionally, converting V-safe participants' free-text responses to MedDRA codes ensures that CDC can disclose the codes to researchers and the public without the risk of inadvertently releasing a participant's highly sensitive health information. CDC is conducting MedDRA coding of V-safe data to further the agency's understanding of vaccine adverse events, as well as assist researchers to do the same.

\*      \*      \*

---

[8] CDC has converted data collected by the Vaccine Adverse Events Reporting System into MedDRA codes and released that information for research purposes for over 16 years.

[9] For example, reports of "a temperature of 102," "my temperature was high," and "his forehead was burning up," would all be converted to the MedDRA code "fever."

- 13 -

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 20th day of March 2023.

_Roger Andoh_

Roger Andoh
Freedom of Information Act Officer Centers for Disease Control and Prevention Agency for Toxic Substances and Disease Registry
United States Department of Health and Human Services

# Exhibit A

# Siri | Glimstad

NEW YORK | LOS ANGELES | MIAMI
PHOENIX | DETROIT | DENVER | AUSTIN

200 Park Avenue, 17th Floor, New York, NY 10166
sirillp.com | P: (212) 532-1091 | F: (646) 417-5967

## CDC FREEDOM OF INFORMATION ACT REQUEST

**VIA ONLINE PORTAL**                                                April 1, 2022

Roger Andoh
Freedom of Information Officer
Centers for Disease Control and Prevention
1600 Clifton Road, N.E., Building 57, Room MS D-54
Atlanta, Georgia 30333

*Re: All Data Submitted to v-safe (IR#0738)*

Dear Sir or Madam:

This firm represents the Informed Consent Action Network ("**ICAN**"). On behalf of ICAN, please provide the following records to foia@sirillp.com in electronic form:

**All data submitted to v-safe since January 1, 2020.**

We ask that you waive any and all fees or charges pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). ICAN is a not-for-profit news media organization whose mission is to raise public awareness about vaccine safety and to provide the public with information to give informed consent. As part of its mission, ICAN actively investigates and disseminates information regarding vaccine safety issues for free, including through its website,[1] a weekly health news and talk show,[2] and through press events and releases. ICAN is seeking the information in this FOIA request to allow it to contribute to the public understanding of the government's vaccine safety programs, including the government's efforts to promote vaccine safety. The information ICAN is requesting will not contribute to any commercial activities.

Please note that the FOIA provides that if only portions of a requested file are exempted from release, the remainder must still be released. We therefore request that we be provided with all non-exempt portions which are reasonably segregable. We further request that you describe any deleted or withheld material in detail and specify the statutory basis for the denial as well as your reasons for believing that the alleged statutory justification applies. Please also separately state your reasons for not invoking your discretionary powers to release the requested documents

---

[1] https://www.icandecide.org/.

[2] https://thehighwire.com/.

in the public interest. Such statements may help to avoid unnecessary appeal and litigation.  ICAN of course reserves all rights to appeal the withholding or deletion of any information.

Access to the requested records should be granted within twenty (20) business days from the date of your receipt of this letter.  Failure to respond in a timely manner shall be viewed as a denial of this request and ICAN may immediately take further action.

Furthermore, we specifically request that the agency provide us with an estimated date of completion for this request.

If you would like to discuss our request or any issues raised in this letter, please feel free to contact us at (212) 532-1091 or foia@sirillp.com during normal business hours.  Thank you for your time and attention to this matter.

Very truly yours,

*/s/ Aaron Siri*
Aaron Siri, Esq.
Elizabeth A. Brehm, Esq.
Colin M. Farnsworth Esq.

# Exhibit B



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**                    Public Health Service

Centers for Disease Control
and Prevention (CDC)
Atlanta GA 30333

April 6, 2022

*SENT VIA EMAIL*

Aaron Siri
Siri & Glimstad LLP
200 Park Avenue
17th Floor
New York, NY 10166
Via email: foia@sirillp.com

Dear Mr. Siri:

The Centers for Disease Control and Prevention and Agency for Toxic Substances and Disease Registry (CDC/ATSDR) received your Freedom of Information Act (FOIA) request dated April 1, 2022. Your request assigned number is #22-01281-FOIA, and it has been placed in our complex processing queue (copy enclosed).

**Extension of Time**
In unusual circumstances, an agency can extend the twenty-working-day limit to respond to a FOIA request.

We will require more than thirty working days to respond to your request because:
☐ We reasonably expect to consult with two or more C/I/O/s, or another HHS operating division or another federal agency about your request.

To process your request promptly, please consider narrowing the scope of your request to limit the number of responsive records. If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact the analyst handling your request Irma Diaz at 770-488-6310 or our FOIA Public Liaison, Roger Andoh at 770-488-6277. Additionally, you may contact the Office of Government Services (OGIS) to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services; National Archives and Records Administration; 8601 Adelphi Road-OGIS; College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

**Fees and Fee Waivers**
You requested that we waive fees associated with processing your request, your request is granted, however we may charge reduced fees instead of waiving all fees. If we decide to charge reduced fees you will be notified.

**Fee Category**
Because you are considered an "Other requester" you are entitled to two hours of free search time, and up to 100 pages of duplication (or the cost equivalent of other media) without charge, and you will not be charged for review time. We may charge for search time beyond the first two hours and for duplication beyond the first 100 pages. (10 cents/page).

**Cut-off-date**
If you don't provide us with a date range for your request, the cut-off date for your request will be the date the search for responsive records starts.

You may check on the status of your case on our FOIA webpage https://foia.cdc.gov/app/Home.aspx and entering your assigned request number. If you have any questions regarding your request, please contact me at 770-488-6310 or via email at jy09@cdc.gov.

Sincerely,

Roger Andoh
CDC/ATSDR FOIA Officer
Office of the Chief Operating Officer
Phone: (770) 488-6399
Fax: (404) 235-1852

22-01281-FOIA